## GRANT AND BURLINGAME v. UNITED STATES.

APPEAL FROM AND IN ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 831. Argued January 6, 1913.—Decided January 20, 1913.

A judgment for criminal contempt is reviewable only by writ of error. An appeal will not lie.

Only the person charged with contempt can sue out the writ of error; one who appeared simply to state his claim to the books and papers mentioned in the subpœna does not thereby become a party to the proceeding and he has no standing to sue out a writ of error.

Professional privilege does not relieve an attorney from producing

under subpœna of the Federal grand jury books and papers of a corporation left with him for safe keeping by a client who claimed to be owner thereof.

Independent books and documents of a defunct corporation left with an attorney for safe-keeping by a client claiming to own them are not privileged communications.

Books and documents of a corporation must be produced by an attorney with whom they were left for safe-keeping even if they might incriminate the latter.

Notwithstanding a corporation ceases to do business and transfers its books to an individual, the books retain their essential character and are subject to inspection and examination of the proper authorities and there is no unreasonable search and seizure in requiring their production before the grand jury in a Federal proceeding. *Wheeler* v. *United States*, 226 U. S. 478.

THE facts are stated in the opinion.

*Mr. William A. Keener* and *Mr. Dallas Flannagan* for appellant and plaintiff in error submitted:

The finding of the court that Grant received the packages and box as a warehouseman is unsupported by the evidence.

The title to the books and letters called for by the subpœna, being in Burlingame personally, the case of *Wilson* v. *United States*, 221 U. S. 361, has no application to the case at bar.

There is no law of Arizona requiring the keeping of such books or papers as is called for by the subpœna and there is no law of the State of New York requiring the keeping of such books or papers by a foreign corporation. The only books required by the laws of the State of New York to be kept by a foreign corporation is a stock book. See Stock Corporation Law, § 33 of the Laws of the State of New York, 1909, Chapter 61.

The packages and box having been left with Mr. Grant as attorney for Burlingame, and the books and letters called for by the subpœna being the personal property of Burlingame, the order appealed from was erroneous.

Should the Government succeed in requiring Grant to open the packages and box and in making him act as a search warrant officer of the Government, then it is proposed to have Grant answer whether or not he has found the books and letters called for by the subpœna. In other words, they propose to prove through him the possession and control of such books and letters as a preliminary to calling for the same.

This is not permissible under the Fifth Amendment within *Ballman* v. *Fagin,* 200 U. S. 186.

The Government having required Grant to learn the whereabouts of the books and letters and having required him to disclose that they are in his possession as attorney, then the Government proposes to require Grant to produce these books and letters before the grand jury. This is in violation of the Fourth and Fifth Amendments to the Constitution. *Boyd* v. *United States*, 116 U. S. 616.

*The Solicitor General*, with whom *Mr. Loring C. Christie* was on the brief, for the United States.

MR. JUSTICE HUGHES delivered the opinion of the court.

Walter B. Grant and E. E. Burlingame seek, both by appeal and by writ of error, a review of a judgment of the District Court by which Grant was adjudged to be guilty of contempt.

Burlingame was indicted by a Federal grand jury in the Southern District of New York on August 30, 1911, and again on March 15, 1912, the latter indictment being found against him in connection with The Ellsworth Company, a corporation, J. D. Smith and others. Walter B. Grant was one of Burlingame's attorneys. On March 13, 1912, a subpœna *duces tecum* was served upon Grant directing him to appear before the grand jury to testify in regard to an alleged violation of the statutes of the

United States by J. D. Smith, and to produce certain books and papers of The Ellsworth Company for the years 1907, 1908, 1909. In response to the subpœna, Grant appeared before the grand jury but did not produce the documents demanded. On being asked whether he had received from Burlingame any box of books or papers, he declined to answer further than to say that he had received nothing from Burlingame save in his capacity as attorney for the purpose of professional consultation and of preparing for the defense of his client. He said that he had not opened any box received from Burlingame, and he refused to open any such box in order to ascertain whether or not it contained the books or papers called for upon the ground that to do so for the purpose of disclosing the result of his examination would violate his duty and his client's privilege.

The grand jury thereupon presented Grant for contempt. Burlingame appeared in court, set up that the books and papers required to be produced were his individual property and that to produce them or to disclose their contents or whereabouts would tend to incriminate him. The court appointed a referee to take evidence as to the rights and privileges claimed by Grant and as to the ownership of the books and papers, together with such other evidence as might be relevant to the questions raised, and to make report to the court with his conclusions. Much testimony was taken before the referee who submitted an elaborate report upon the facts and the law, embracing the following conclusions: that Burlingame had at all times been the sole stockholder of the Ellsworth Company which, on December 31, 1909, had ceased to do business; that the legal title to the books and papers was in the corporation and not in Burlingame; that if the title had passed to Burlingame prior to the service of the subpœna, nevertheless they would not be privileged for the reason that they were corporate in character;

that, in August or September, 1911, Burlingame had delivered two packages and a box to Grant which the latter had in his possession; that the packages and box were delivered to Grant for safe-keeping in his office and were not delivered to him in his professional capacity as attorney, or for the purpose of consultation with him in such capacity; that their contents were not privileged and that Grant should have searched therein for the books and papers, should have produced them if found, and should have answered the questions put to him before the grand jury; and finally that by reason of his refusals he was in contempt.

Exceptions were filed to the report which was confirmed by the court save as to the finding that the legal title to the books and papers was in the corporation. Grant was thereupon adjudged to be in contempt for failing to examine the contents of the box and packages for the purpose of ascertaining whether they contained the papers specified in the subpœna and for failing to answer the questions put to him concerning them by the grand jury. It was provided that he might purge himself of the contempt by making the examination and by answering such questions and producing the papers, if found, in response to a fresh subpœna. In punishment, he was fined a sum equal to the expenses of the reference.

The appeals, both of Grant and Burlingame, from this judgment must be dismissed. The case was one of criminal contempt reviewable only by writ of error. *Bessette* v. *W. B. Conkey Co.*, 194 U. S. 324, 336–338; *Bucklin* v. *United States*, 159 U. S. 680; *Gompers* v. *Bucks Stove and Range Co.*, 221 U. S. 418, 444; *In re Merchants' Stock Co.*, 223 U. S. 639.

In the writ of error, Burlingame has attempted to join. The subpœna was not directed to him and he was not charged with contempt. It is true that he appeared before the court, when Grant was presented by the grand jury,

and stated his claim to the books and papers. In the subsequent inquiry, the purpose of the court manifestly was to ascertain all the facts in order that it might properly decide the question with respect to the alleged contumacy of Grant. Neither Burlingame's appearance before the court, nor the order of reference, made Burlingame a party to the proceeding, which was in its nature criminal and was instituted and conducted to the final judgment against Grant alone. Burlingame had no standing to sue out a writ of error. *Bayard* v. *Lombard*, 9 How. 530, 551; *Payne* v. *Niles*, 20 How. 219, 221; *Ex parte Cockcroft*, 104 U. S. 578. And the writ must be dismissed as to him.

The judgment is attacked by Grant upon the ground that there has been a denial of constitutional right. It is contended by the Government that the writ should also be dismissed as to Grant because the facts are not open to review and it was found by the court below that he had not received the box and packages in his professional capacity as attorney or for purposes of consultation. While this suffices to show that the questions put to the witness did not invade the professional privilege, the finding does not control the decision of the case with respect to the requirement of the production of the books and papers if in Grant's possession. (See 4 Wigmore on Evidence, § 2307.) These were independent documents. Even if they had been received by Grant as attorney for purposes of consultation, they could not be regarded as privileged communications. And, assuming that they were left with him merely for safe-keeping, they would still be held by Grant as Burlingame's agent. The inquiry thus remains whether in these circumstances Grant could refuse their production if they would tend to incriminate his principal.

Although the merits of the constitutional question are thus before us, it does not require extended discussion in view of the recent decisions of this court. The books

and papers called for by the subpœna were corporate records and documents. Whether or not the title to them had passed to Burlingame when The Ellsworth Company ceased to do business, their essential character was not changed. They remained subject to inspection and examination when required by competent authority, and they could not have been withheld by Burlingame himself upon the ground that they would tend to incriminate him. Nor was there any unreasonable search or seizure. *Wheeler* v. *United States*, 226 U. S. 478; *Wilson* v. *United States*, 221 U. S. 361.

It follows that Grant, from any point of view, was not justified in his refusals, and the judgment is

*Affirmed.*