**UNITED STATES v. HOYT.**

District Court, S. D. New York.
Nov. 24, 1931.

Kaufman & Weitzner, of New York City (Samuel H. Kaufman, of New York City, of counsel), for defendant.

George Z. Medalie, U. S. Atty., of New York City (Leon Leighton, Asst. U. S. Atty., of New York City, of counsel), for the United States.

WOOLSEY, District Judge.

This motion is in all respects denied except as to the item No. 3 named in the motion papers (a memorandum to defendant, dated August 13, 1930, from C. K. Woodbridge, re C. E. Reed), to the return of which the United States attorney does not object.

I. The facts in this case may for the purposes of this motion be summarized as follows:

On October 9, 1930, a petition in involuntary bankruptcy was filed in this court against the defendant and certain other persons, individually, and also as copartners doing business under the firm name and style of Prince & Whitely.

The Irving Trust Company was appointed receiver of the property of the alleged bankrupts by an order made October 9, 1930, and thereupon the receiver took possession not only of the books, documents, and records of the firm of Prince & Whitely, but also of its constituent partners, including the personal books, records, and documents of the defendant, as well as the books and records of a Delaware corporation called J. M. Hoyt & Co., entirely owned by the defendant.

II. The bankruptcy proceedings never got further than this receivership, owing to the fact that a composition was entered into between the bankrupts and their creditors.

Consequently, neither the firm of Prince & Whitely, nor the defendant was ever adjudicated a bankrupt; nor was there ever any trustee in bankruptcy elected or appointed of the estate of the defendant or of the firm of Prince & Whitely.

III. The composition above mentioned was confirmed by an order of this court dated May 22, 1931, and the alleged bankrupts were discharged, as partners and individually, thereby, from their debts as members of the copartnership of Prince & Whitely.

The composition thus confirmed involved the creation of a liquidating corporation to be known as the P. & W. Creditors Corporation to which the property of the copartnership in the receiver's hands was to be transferred and assigned by the bankrupts and the receiver, and which was to have as its board of directors certain named persons who themselves, or through their nominees, were to hold all the stock of the corporation in trust until the consummation of the composition, after which the stock was to be transferred to the copartnership of Prince & Whitely, or its nominee.

By the provisions, here relevant, of this order confirming the composition, the P. & W. Creditors Corporation was required to submit itself formally to the jurisdiction of this court, in order that this court might have summary jurisdiction over it to see that it complied with the composition order; and the books and records of the alleged bankrupts, of the receiver and of the accountants, including documents, work sheets, and all papers, were retained in the custody of this court, with the Irving Trust Company as special custodian thereof, pending the determination of various reclamation claims and disputed proofs of debt.

It was, however, provided in the order that the P. & W. Creditors Corporation should be placed by the receiver in possession of these papers subject to further order of the court, and that they should be available to all reclaimants and their counsel during business hours. Thus the P. & W. Creditors Corporation was made an agency of the court to assist in effectuating the composition as confirmed.

IV. On July 2, 1931, on the application of the United States attorney, through one of his assistants, Judge Goddard entered an order that the Irving Trust Company, as custodian thereof, turn over to the United States attorney certain named books, records, and documents, hereinafter called for convenience papers, among which are those sought to be returned to the defendant on this motion.

The basis of this application was that two indictments had been returned against the defendant charging a fraudulent use of the mails in violation of title 18, United States Code, § 338 (18 USCA § 338), Criminal Code, § 215, and that it was necessary for the prosecution of these indictments that the United States attorney should have the papers named in his petition.

V. On July 29, 1931, the involuntary petition in bankruptcy against the defendant individually was dismissed by an order of this court, which provided that the Irving

Trust Company be directed to turn over to the defendant all the assets and personal effects belonging to him individually, then in its possession. The papers sought herein were not then in possession of the receiver, for they had already been turned over to the United States attorney pursuant to Judge Goddard's order.

VI. The defendant makes this motion for an order vacating Judge Goddard's order of July 2, 1931, and for the return of these papers on the ground that, as the bankruptcy proceeding has been dismissed against him, the United States attorney has no right longer to retain the papers enumerated in his petition, which were voluntarily turned over by him on demand to the receiver in the involuntary bankruptcy proceeding.

The defendant invokes the provisions of the Fourth and Fifth Amendments of the United States Constitution as the reason why these papers should not be longer retained by the United States attorney.

In so far as here material (1) the Fourth Amendment provides that: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, * * *" and (2) the Fifth Amendment provides that: "No person * * * shall be compelled in any Criminal Case to be a witness against himself. * * *"

The contentions of the defendant are:

First. That to use the documents and papers enumerated in his petition would be, in effect, to make him testify against himself; and

Second. That the United States attorney secured those documents by what was, in effect, an illegal seizure; and that, consequently, the retention of the enumerated papers is a violation of the defendant's constitutional rights and also of the constitutional rights of the Delaware corporation known as J. M. Hoyt & Co., in which he was the sole stockholder, and over which he had the entire dominion and control.

VII. The papers here involved fall into six different categories, namely, papers belonging respectively:

(1) To Emma Patten Hoyt, the wife of defendant; (2) to Margaret A. Patten, mother-in-law of defendant; (3) to Prince & Whitely, the firm in which defendant was a copartner; (4) to The H. & J. Securities Corporation; (5) to J. M. Hoyt & Company, the corporation of Delaware above

mentioned; and (6) to James M. Hoyt individually.

VIII. As to the first five categories, except possibly as to the third, the defendant has not any locus standi to make this motion, for the constitutional privilege invoked is entirely personal and not derivative from the relationship of the defendant to the persons or corporations whose constitutional rights may be claimed to have been involved.

Recently this settled doctrine was again recognized by the Circuit Court of Appeals for this circuit in affirming a conviction had before me in a criminal conspiracy case, in which the individual defendants claimed an invasion of their constitutional rights by the seizure, acquiesced in by the corporation, of certain corporate books, records, and papers. U. S. v. DeVasto et al., 52 F.(2d) 26, 29 (C. C. A. 2). Cf. Lusco v. U. S. (C. C. A.) 287 F. 69, 70; and Haywood v. U. S. (C. C. A.) 268 F. 795, 798, 803, 804.

IX. As to the corporate papers in the fourth and fifth categories, an additional reason for denial of this motion is found in the principle laid down in the cases of Essgee Co. v. United States, 262 U. S. 151, 158, 43 S. Ct. 514, 67 L. Ed. 917; Grant v. United States, 227 U. S. 74, 33 S. Ct. 190, 57 L. Ed. 423; Wheeler v. United States, 226 U. S. 478, 489, 490, 33 S. Ct. 158, 57 L. Ed. 309; Dreier v. United States, 221 U. S. 394, 31 S. Ct. 550, 55 L. Ed. 784; Wilson v. United States, 221 U. S. 361, 384, 385, 31 S. Ct. 538, 55 L. Ed. 771, Ann. Cas. 1912D, 558; Hale v. Henkel, 201 U. S. 43, 26 S. Ct. 370, 50 L. Ed. 652; Fuller v. United States, 31 F.(2d) 747, 748 (C. C. A. 2), wherein it was held unequivocally that an officer of a corporation is not given any right to object to the production of papers because they may disclose his guilt, even though they are in his custody.

The fact that the defendant is the sole stockholder of J. M. Hoyt & Co., the Delaware corporation, and, consequently, it was in effect his corporate alter ego, does not render the principle inapplicable here. Cf. In re Foster Construction Corporation (Appeal of Popkin), 50 F.(2d) 693, 695 (C. C. A. 2).

The corporate nonconductibility, to borrow the apt metaphor of Mr. Justice Holmes, is as effectual in this situation as the defend-

ant undoubtedly expected it to be in the event of civil claims against him.

Here, moreover, the papers involved were not in the defendant's custody when seized, but were in the custody of the Irving Trust Company, appointed by this court as special custodian, and, consequently, the defendant has not even as plausible a basis as in some of the cases cited on which to found his motion in regard to the corporate papers under discussion.

X. That brings me to the third and sixth categories involving the defendant's personal papers and the papers of his firm.

As to these categories, the defendant's position is no better than in respect of the others already discussed.

■ The Fourth and Fifth Amendments to the United States Constitution constitute guaranties against the abuse of process and of trial procedure, and are not concerned with the substantive law, either civil or criminal. Cf. McCarthy v. Arndstein, 266 U. S. 34, 41, 45 S. Ct. 16, 69 L. Ed. 158; Johnson v. United States, 228 U. S. 457, 458, 33 S. Ct. 572, 57 L. Ed. 919, 47 L. R. A. (N. S.) 263.

The whole philosophy of the situation may, I think, be thus explained:

■ Constitutional rights are not fixed and cannot be worn by a party as if they were an impervious armor through which he cannot be reached. They may be waived, and, indeed, they are continually waived in whole or in part in almost all the relationships of life, as is shown in the remarks of Mr. Justice Holmes, when a justice of the Massachusetts Supreme Court, in McAuliffe v. Mayor of New Bedford, 155 Mass. 216, 219, 29 N. E. 517, and cf. Gitlow v. Kiely (D. C.) 44 F.(2d) 227, 229, 230, affirmed 49 F.(2d) 1077 (C. C. A. 2).

■ Consequently, what really has occurred when a man goes into bankruptcy is that, by getting credit and so going into debt and thus assuming a commercial relation towards society, he may, if he becomes insolvent, put himself in such a position that under the Bankruptcy Law, which is supposed to exist as much for his benefit as for the benefit of his creditors, he must surrender his papers and be prepared through their use by the court to make good his debts to his creditors, in so far as his estate permits him to do so. Thus, by coming through his own acts under the substantive law of insolvency, he has involved himself in a waiver of his right to claim that his papers should remain wholly inviolate, and his constitutional rights in regard to them are to a certain extent impaired.

■ But quite irrespective of what I may perhaps call this antecedent waiver of part of his constitutional rights regarding his papers, the time at which a man must invoke his privileges under the Fourth and Fifth Amendments, in regard to their use against him, is no later than when they are taken from his custody or possession. Johnson v. United States, 228 U. S. 457, 33 S. Ct. 572, 57 L. Ed. 919, 47 L. R. A. (N. S.) 263; Fuller v. United States, 31 F.(2d) 747, 748 (C. C. A. 2); In re Dier & Co. (D. C.) 279 F. 274, affirmed sub-nominee Dier v. Banton, 262 U. S. 147, 43 S. Ct. 533, 67 L. Ed. 915.

Certainly, if a man does not then personally raise the question of his constitutional rights, he is deemed to have waived them by acquiescence, and his papers then go, to borrow a phrase from another branch of the law, which, although perhaps not wholly apt, will clearly carry my meaning, into the public domain, so far as he is concerned, and remain there until by lawful means he has again secured the custody and possession of such papers, and has thus again become invested with his constitutional rights in regard to them. That, as I read it, is the teaching of Greenbaum v. United States, 280 F. 474, 477, 478 (C. C. A. 6); if it does not so hold, I disagree with it.

■ XI. The defendant's constitutional privilege therefore did not adhere to his papers as such, but only to his papers when in his possession or custody, assuming that such possession and custody has not been rendered unavailing as a basis for such privilege, due to some act of his which has placed him outside the ambit thereof, as, for example, his lawful arrest for crime with his papers on his person, or by his having unlawfully repossessed himself of them.

■ XII. The latest point of time at which the defendant here could have made the point which he now seeks to make, if, indeed, owing to the antecedent waiver above referred to it was even then possible, was when the receiver in bankruptcy asked for his papers. Matter of Harris (D. C.) 164 F. 292, 294, heard on certificate only by the United States Supreme Court, 221 U. S. 274, 31 S. Ct. 557, 55 L. Ed. 732; but see Johnson v. United States, 228 U. S. 457, 458, 33 S. Ct. 572, 57 L. Ed. 919, 47 L. R. A. (N. S.) 263.

■ As he failed to make his point then, the defendant may not now object whether the person from whom his papers are taken by the United States attorney is a trustee in bankruptcy, who has both title and possession, Johnson v. United States, 228 U. S. 457, 458, 459, 33 S. Ct. 572, 57 L. Ed. 919, 47 L. R. A. (N. S.) 263, or a receiver in bankruptcy who has possession only, Dier v. Banton, 262 U. S. 147, 149, 150, 43 S. Ct. 533, 67 L. Ed. 915, or a special court custodian who has custody of the papers under an order of the bankruptcy court, as did the Irving Trust Company in this case.

■ Furthermore, if the government's possession be not tainted with illegality, due to connivance with the theft, the defendant cannot get his papers back or secure a suppression of evidence based on them, even if they have been taken larcenously from his possession by a third person. Burdeau v. McDowell, 256 U. S. 465, 41 S. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159.

XIII. The defendant here must therefore fail entirely on this motion, except in respect of the one item, No. 3, to the return of which the government does not object.

XIV. The defendant here is in a procedural position from which he cannot escape owing to the fact that a vigilant United States attorney acted in securing the papers from a third person having custody of them before the defendant had either actually secured their custody and possession, or, indeed, had the right to have them returned to him. His is the unfortunate situation which is almost always involved, as Mr. Justice Holmes said in Matter of Harris, 221 U. S. 274 at page 279, 31 S. Ct. 557, 558, 55 L. Ed. 732, where bankruptcy "follows crime."

An order in accordance with this opinion may be submitted for signature on two days' notice.