In the Matter of Grand Jury Subpoenas.

In re **MAL BROTHERS CONTRACTING CO.**, Appellant in No. 19297,
and
Mal Brothers Contracting Company, Inc.
Appeal of George **MALANGA**, in No. 19296.
Nos. 19296, 19297.

United States Court of Appeals, Third Circuit.

Argued April 7, 1971.

Decided July 6, 1971.

Justin P. Walder, Schapira, Steiner & Walder, Newark, N. J. (Jeffrey Barton Cahn, Newark, N. J., on the brief), for appellants.

John J. Barry, Asst. U. S. Atty., Newark, N. J. (Herbert J. Stern, U. S. Atty., Newark, N. J., Donald J. Williamson, Asst. U. S. Atty., on the brief), for appellee.

Before GANEY, VAN DUSEN and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

GANEY, Circuit Judge.

Certain officials of the City of Newark were indicted as being part of organized crime (*Criminal No. 548–69*) concerning matters pertaining to the city's official business. During their trial, Irving Kantor testified that he had created a front corporation, Kantor Plumbing Supply Company, to serve as a funnel through which large sums of money were passed from contractors to city officials. He stated that Mal Brothers Contracting Co. ("Mal Bros.") was one of the contractors, and on June 10, 1970, checks of Mal Bros. to Kantor Supply were introduced into evidence. On behalf of the Federal Grand Jury, then in session, subpoenas *duces tecum* were served on La Fera Contracting Co. ("La Fera") and C. F. Melanka & Sons, Inc. ("Melanka"), two of the contractors named by Kantor.

The appeal before us is the culmination of events brought to a head on June 11, 1970, when La Fera and Melanka claimed they were unable to comply with the subpoenas because the records called for production by them were in the custody of Mal Bros., pursuant to an agreement creating an entity entitled "Mal Bros. Contracting Co.—York Street Drainage" ("York Street Joint Venture").

On June 16, 1970, Louis J. Malanga sent reply letters to La Fera and Melanka setting forth his refusal to turn over any joint venture documents on the advice of counsel. The following day, a subpoena *duces tecum* was served upon Mal Brothers Contracting Co., Inc., to produce the records of that entity from the beginning of 1965 to June 1, 1970. Upon being advised that the "Inc." was a typographical error, the United States Attorney issued an identical subpoena against Mal Bros. as a partnership. Mal Bros. moved to quash both subpoenas, contending, in essence, that it conducted business solely as a partnership and that, accordingly, its records were protected from Grand Jury inspection by the 4th and 5th Amendments.

On June 23, 1970, a motion to quash the subpoenas was filed by Mal Bros. and on July 16, 1970, the district court

"ORDERED that Mal Bros. Contractquash the subpoena duces tecum served on Mal Bros. Contracting Co. is denied; it is further

"ORDERED that Mal Bros. Contracting Co. produce before the Federal Grand Jury, on or before July 21, 1970, all documents and records relating to the York Street Joint Venture, also known as Mal Bros. Contracting Company—York Street Drainage, and it is further

"ORDERED that Mal Bros. Contracting Co. produce before the Federal Grand Jury on or before July 21, 1970, all documents and records relating to its participation in any joint ventures in the State of New Jersey with respect to any federal, state, county, municipal or bi-state agency or any agency or authority of the above categories which documents and records it holds in its capacity as custodian to which it has a right to access by virtue of its participation therein, and it is further

"ORDERED that Mal Bros. Contracting Co. produce, before the Federal Grand Jury, on or before July 21, 1970, all partnership records requested by the above-mentioned subpoena duces tecum, without prejudice to assert any constitutional privilege to such records."

From this order of the district court of July 16, 1970, George Malanga and Mal Bros. Contracting Co. appealed to this court.

On July 17, 1970, the United States Attorney was informed that portions of the York Street Joint Venture records presently could not be located and Mal Bros. had requested its bank to photostat all checks pertaining to the joint venture, as well as its bank statements, for the purpose of submitting them to the Government. However, on July 20, 1970, Mal Bros. turned over to the United States Attorney all records of York Street Joint Venture which it claimed could be located and stated that it had been advised by its accountant that it could destroy the bookkeeping and accounting records after a three-year period.

On July 21, 1970, Mal Bros., represented by George Malanga, appeared before the Grand Jury and refused to produce any documents requested under the order of July 16, 1970, with the exception of two small manila packages labeled "Cash Disbursements, 1968 and 1969" and with it asserted his claim of privilege against self-incrimination under the 5th Amendment with respect to the contents of the envelopes.

On July 24, 1970, Mal Brothers Contracting Co. and George Malanga, a partner thereof, in accordance with the prior order of the court, voluntarily turned over a list of thirty-six documents, including deposit slips, accounts payable ledger cards, cash receipts journals etc., which the court directed be secured for the court and should, in no wise, constitute a waiver of rights or privileges of Mal Bros. Contracting Co. or any partner thereof. A similar group of records falling under 13 different categories had been turned over to the court by the partnership and George Malanga on July 23, 1970, subject to a

similar direction by the court that the turning over of these documents "in no wise shall constitute a waiver of rights or privileges. * * * "

On July 27 and 28, 1970, an evidentiary hearing was held on a show cause motion to resolve the issues of (1) whether Mal Bros. and George Malanga was in "civil" contempt of the July 16th order, and (2) whether George Malanga could properly assert his 5th Amendment privilege as to the Mal Bros. partnership records.

On August 2, 1970, on the basis of stipulated facts and findings made by the court from evidence, the court adjudged Mal Bros. and George Malanga to be in "civil" contempt of the July 16th order, and directed Malanga to be incarcerated and Mal Bros. to pay a daily fine of $1,000 until they purged themselves of contempt or until the Grand Jury ceased to exist.

On August 11, 1970, the district court entered a final judgment, from which these appeals are taken, which judgment included this language:

"* * * the Court having found that Mal Bros. Contracting Co., an alleged partnership, is a type of organization which is so impersonal in the scope of its membership and activities that it cannot be said to embody or represent a purely private or personal interest of its constituents· but rather embodies their common or group interests only, and that as a consequence thereof the records of Mal Bros. Contracting Co. are held by that company in a representative capacity and are not the private records of the respondent George Malanga * * *, it is on this 11th day of August, 1970

"ORDERED that the respondent, George Malanga, is not entitled to invoke the privilege of self-incrimination with respect to the books and records of Mal Bros. Contracting Co., or any joint venture in which it is a party, and the invocation of said constitutional privilege by George Malan-

ga is not available and is therefore overruled."

On February 3, 1971, this court filed a memorandum order adverting to the voluntary turnover of the categories of records for the years 1968 and 1969, of the partnership of Mal Bros. Contracting Co. and recited again that, according to the terms of the July 23 and July 24 orders, the turning over of these documents should in no wise constitute a waiver of rights and privileges of Mal Bros. Contracting Co., or any partner thereof. In its memorandum this court further held that, "Under these circumstances, the final judgment of August 11, 1970, was an appealable order insofar as it applied to the records turned over to the court under the orders of July 23 and July 24, 1970, only. See Cobbledick v. United States, 309 U. S. 323, 328. [60 S.Ct. 540, 84 L.Ed. 783] (1940) (citing Perlman v. United States, 247 U.S. 7, 13 [38 S.Ct. 417, 62 L.Ed. 950])." And it further ordered that "the above mentioned appeals are dismissed [which were from the final judgment of August 11th, ordering that George Malanga was not entitled to the privilege against self-incrimination as to certain books and records], except insofar as they challenge that part of the district court order of August 11, 1970 (40a) which applies to the documents in the custody of the district court pursuant to the orders of July 23, 1970 (28a) and July 24, 1970 (31a)."

Accordingly, the only question left open presently before this court is whether George Malanga can assert his privilege of self-incrimination under the 5th Amendment with respect to the books and records voluntarily turned over by him to the court on July 23rd and 24th, 1970.

The determination of whether a partnership entity obtains here such as to render an individual partner immune from producing partnership records which might possibly be the basis of a criminal charge against him, has had a rather tortious road through the various

courts' interpretation of the 4th and 5th Amendments.

Beginning with Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746, the Court there held that an order requiring the claimants of goods to produce a certain invoice in court for the inspection of the government was violative of both the 4th and 5th Amendments, of the 4th Amendment particularly because it was equivalent to an actual entry on the premises and a search for and seizure of papers which constituted an unreasonable search, and violative of the 5th Amendment because it was forbidden therein to compel a man to be a witness against himself. Later, the assumption developed as the issue of compulsory production of papers by process became a live issue at the turn of the century and was resolved solely on 5th Amendment grounds by successive modifications of *Boyd*. In Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652, the Supreme Court virtually dismissed *Boyd's* 4th Amendment analysis holding that the 4th Amendment was no bar to a court's requiring a person or entity to produce documents in any case where the order was not unreasonable in its scope. In this instance, the Court distinguished the right of an individual from that of a corporation on the ground that the corporation was a creature of the state.

Later, in Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771, the Supreme Court relied on the fact that a corporation owned the documents and that Wilson was simply holding them in a custodial capacity and in so doing read *Boyd, supra,* as applying only to private papers. P. 380, 31 S.Ct. 538.

In Grant v. United States, 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423, the Supreme Court ignored the custodial-ownership distinction and extended *Wilson, supra,* to cover the case of documents owned by the sole stockholder of a dissolved corporation.

Thus in response to a burgeoning of the economy in an open society, the Court was led to examine business documents in aid of regulation of business activities and in United States v. White, 322 U.S. 694, 701, 64 S.Ct. 1248, 1252, 88 L.Ed. 1542, the Court stated:

"* * * The test, rather is whether one can fairly say under all the circumstances that a particular type of organization has a character so impersonal in the scope of its membership and activities that it cannot be said to embody or represent the purely private or personal interests of its constituents, but rather to embody their common or group interests only. If so, the privilege cannot be invoked on behalf of the organization or its representatives in their official capacity. Labor unions—national or local, incorporated or unincorporated—clearly meet that test."

The intimation in *White, supra,* that the privilege of asserting the 5th Amendment might be dependent upon the degree of impersonality of the organization asserting it must be deemed not essential to the core of the decision and the test that it makes requisite.

Following *White* the Supreme Court has routinely denied the 5th Amendment privilege to unincorporated associations without discussion of size, impersonality or other circumstances. McPhaul v. United States, 364 U.S. 372, 81 S.Ct. 138, 5 L.Ed.2d 136; United States v. Fleischman, 339 U.S. 349, 70 S.Ct. 739, 94 L.Ed. 906.

However, when we examine the findings of fact made by the court below, we can clearly see that they were not erroneous and that even if we accept the impersonality test, this entity contravenes it by reason of the fact that the court found that the entity employed 200 to 250 persons a year with an annual payroll in excess of $1,000,000; that its annual receipts were approximately $10,000,000 a year excluding joint ventures with other companies; and that it owned equipment valued at approximately $1,000,000. Further, none of the partners in the entity were engineers or

were familiar with the accounting and bookkeeping end of the business.

In our judgment, it is essentially clear that the defendants here had all the aspects of a corporate enterprise and that there was nothing personal or private in connection with the papers solicited from them under the subpoena herein. There can be no rational basis for upholding a claim to 5th Amendment protection to conduct a business operation as a personal rather than a corporate operation.

The judgment of the district court overruling appellant, George Malanga's claim of 5th Amendment privilege with respect to the books and records of Mal Bros. will be affirmed.