**In re GRAND JURY PROCEEDINGS.**

United States District Court,
N. D. Ohio, E. D.

Sept. 12, 1972.

William L. Fry, Dept. of Justice, Antitrust Div., Cleveland, Ohio, for petitioner.

Gerald W. Palmer, Jones, Day, Cockley & Reavis, Cleveland, Ohio, for respondent.

MEMORANDUM OPINION AND
ORDER

LAMBROS, District Judge.

The Government has moved for a court order compelling Samuel Moore and Company ("Samuel Moore") to com-

ply with a subpoena *duces tecum* and, in particular, to produce for the grand jury twelve appointment calendars used and maintained by executives of Samuel Moore.

In opposition to the Government's motion, Samuel Moore makes two arguments. First, Samuel Moore asserts that the appointment calendars are personal rather than corporate documents and that, therefore, the individual officers have a right to protect disclosure by asserting the privilege against self-incrimination. Second, it contends that by directing the subpoena against the corporation rather than against individual officers, the Government would achieve indirectly what it could not achieve directly—the denial of the right of each officer to raise his privilege against self-discrimination.

## I. BACKGROUND OF THIS DISPUTE

On May 31, 1972, the Antitrust Division served Samuel Moore with a subpoena *duces tecum* demanding the production of certain documents. On June 19, 1972, the return date specified, Samuel Moore complied with the subpoena. However, it refused to supply the documents described in Paragraph 5 of the attachment to the subpoena.[1]

Samuel Moore admitted the existence of twelve documents which would "fall under" Paragraph 5. In particular, six of the documents are appointment calendars used and maintained for the years 1969, 1970 and 1971 by the president and vice president of Samuel Moore. The remaining six are appointment calendars used and maintained for the year 1972 by the above mentioned officers and four other officers.

## II. SCOPE OF PRIVILEGE

■ In defining the scope of the fifth amendment privilege against self-

incrimination, the courts have traditionally distinguished between corporate and personal documents. Unlike a natural person, a corporation may be compelled to produce documents of its business operations even when the documents are incriminating.

The rationale for the distinction was explained by the United States Supreme Court in Hale v. Henkel, 201 U.S. 43, 73–75, 26 S.Ct. 370, 50 L.Ed. 652 (1906), and has been cited with approval by the Court in later decisions. Wilson v. United States, 221 U.S. 361, 380, 31 S. Ct. 538, 55 L.Ed. 771, 779 (1911); United States v. White, 322 U.S. 694, 699–700, 64 S.Ct. 1248, 88 L.Ed. 1542, 1546 (1944); McPhaul v. United States, 364 U.S. 372, 380, 81 S.Ct. 138, 5 L.Ed.2d 136, 143 (1960). The Court based its reasoning on the practical effect and legal form of the corporation.

The Court recognized that the corporation has certain powers which permit it to carry on business differently than a natural person, and that, as a practical matter, enforcement of laws to prevent abuse of these powers would be difficult if the corporation were permitted to refuse to produce books and documents. Hale v. Henkel, 201 U.S. at 74, 26 S.Ct. 370.

In addition, the Court based its distinction on the legal form of the corporation as a creature of the state. It found that the legislature had reserved the right to find out whether the corporation had exceeded the powers granted it by compelling the production of corporate records. Hale v. Henkel, 201 U.S. at 74, 75, 26 S.Ct. 370.

■■ In applying this reasoning to distinguish corporate and personal documents, the courts have examined the nature of the documents and the capacity in which the documents are held. Wilson v. United States, 221 U.S. at 380, 31

---

1.  Paragraph 5 of the attachment demanded: all calendars, notes, note pads, day books, telephone call books, appointment books, reminder pads or notebooks and diaries used in any connection with the company's business by each person named in response to paragraph 3 herein.

S.Ct. 538. If, for example, the papers are kept by the individual in his capacity as an officer, they cannot be the subject of personal privilege, even though they may tend to personally incriminate the officer. McPhaul v. United States, 364 U.S. at 380, 81 S.Ct. 138. Furthermore, if the character of the papers is such that the officer cannot properly discharge his corporate duties without keeping them, they are considered corporate documents. In Matter of Grand Jury Investigation, 338 F.Supp. 1379, at 1380 (W.D.Pa.1972) (a case involving appointment calendars of corporate executives).

In this case, Samuel Moore contends that the calendars should be considered personal for the following reasons: (1) they are kept only by the officer and his secretary; (2) they are not used to communicate to other members of the corporation; (3) the corporation does not require that the officer keep a calendar; (4) the corporation does not require that the calendar be saved; (5) the calendar is not kept in corporation files; and (6) no other employee has the right to see the calendar.

The Government counters that the calendars are used primarily for corporate business and not primarily for personal or private business matters and argues that the facts concerning the custody and control of the calendars are not relevant to the Court's determination of their character. Furthermore, the Government warns that to allow corporate officers to shield these documents from discovery would create a substantial loophole to avoid grand jury investigation.

■ Considering the rationale for the distinction between personal and corporate documents, the Court finds the Government's analysis of the facts in this case to be most persuasive. As in In Matter of Grand Jury Investigation, 338 F.Supp. 1379, at 1380 (W.D.Pa.1972), the documents involved in this case are

calendars which, as a practical matter, a corporate executive must maintain in his office to discharge his duties. The primary purpose of keeping them is apparently to record business appointments. There is no indication that notations of personal matters on the office calendars were anything more than an incidental use. *See* United States v. American Radiator and Standard Sanitary Corp., 278 F.Sup. 608, 616 (W.D.Pa.1967).

Furthermore, the Court finds the evidence of custody and maintenance of the calendars by the executive and his secretary to be inadequate to counterbalance the essential corporate character of the documents. In previous decisions, the courts have accorded little weight to the identity of the person writing or possessing the documents. Rogers v. United States, 340 U.S. 367, 373, 71 S.Ct. 438, 95 L.Ed.2d 344 (1951); McPhaul v. United States, 364 U.S. at 380, 81 S.Ct. 138; Grant v. United States, 227 U.S. 74, 80, 33 S.Ct. 190, 57 L.Ed. 423 (1963); Wilson v. United States, 221 U.S. at 378–380, 31 S.Ct. 538. Indeed, to accord the weight to custody and maintenance which is suggested by Samuel Moore would mean that corporate executives could defeat the Government's subpoena power by retaining sensitive corporate records in their own offices and adding personal notes to them.

For these reasons, the Court finds that the documents are corporate rather than personal in nature and in use.

## III. INDIRECT COERCION

Samuel Moore has argued that, irrespective of the personal or corporate character of the documents, the corporation should not be placed in a position of coercing its officers to relinquish their constitutional right to assert the privilege against self-incrimination. Such a requirement, they have claimed, would be to allow the Government to accomplish indirectly what it could not accomplish directly by subpoenaing the officers.

It is well settled that a person does not lose his fifth amendment rights as to personal documents simply because the papers are temporarily out of his possession. Thus, in United States v. Judson, 322 F.2d 460 (9th Cir. 1963), when the taxpayer turned over certain documents to his attorney, the attorney was allowed to raise the privilege against self-incrimination on behalf of his client. *Supra* at 468. *See also* Donaldson v. United States, 400 U.S. 517, 530–531, 91 S.Ct. 534, 27 L.Ed.2d 580, 589 (1971); United States v. Tsukuno, 341 F.Supp. 839, 842 (N.D.Ill.1972).

However, the subpoena used by the Government in this case does not result in a loss of individual constitutional rights. First, corporate documents may be obtained directly from the officers, even though they may contain matter which is incriminating to the officers in possession of them. Wilson v. United States, 221 U.S. at 377–380, 31 S.Ct. 538; United States v. American Radiator and Standard Sanitary, 278 F.Supp. at 616, 617; McPhaul v. United States, 364 U.S. at 380, 81 S.Ct. 138.

Second, the officer does not lose the right to assert his constitutional privilege by permitting the order to be directed to the corporation. Several avenues are left open to the officer. In American Radiator and Standard Sanitary, the court found that the officer could have refused to produce the documents since the subpoena was directed to the corporation. 278 F.Supp. at 617. In addition, as the United States Supreme Court pointed out in Donaldson v. United States, 400 U.S. 529–531, 91 S.Ct. 534, the Court may permit the objecting party to intervene to assert a privilege.

## IV.  CONCLUSION

Because the appointment calendars in question are corporate documents, the Court finds that compelling their production would not infringe upon the constitutional rights of the corporation or of the executives maintaining and using them.

For this reason, it grants the Government's motion and orders Samuel Moore to produce the twelve appointment calendars described above.

It is so ordered.