**In re Grand Jury No. 79-3
Ramsey AGAN.**

**No. GJ 79-3.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 8, 1980.

William L. Harper, U. S. Atty., N. D. Ga.,
Andrew J. Ekonomou, Asst. U. S. Atty.,
Atlanta, Ga., for plaintiff.

Steven W. Ludwick, Atlanta, Ga., for defendant.

## ORDER

O'KELLEY, District Judge.

Ramsey Agan, president and sole shareholder of Adana Mortgage Bankers, Inc. (Adana), has been subpoenaed to appear before a grand jury and produce for its inspection corporate records designated in a subpoena duces tecum. The grand jury is investigating Adana's business activities, and Agan is a target of the investigation. The U.S. Attorney handling the Adana investigation notified Agan [1] that he would

---

1. Mr. Agan was at all times accompanied and represented by counsel during this proceeding.

For ease of reference, the court speaks of actions taken by Agan's attorney as though they were his own.

be required to give a limited amount of testimony before the grand jury in order to ensure that he complied with the subpoena. The U.S. Attorney indicated he would ask him his name, address, home telephone number, name of business, business address, business telephone number, and whether each of the items requested in the subpoena had been produced. Agan notified the U.S. Attorney that he would refuse to produce the corporate records or answer any questions before the grand jury on the ground that to do so might tend to incriminate him. Prior to Agan's scheduled appearance before the grand jury, Agan and the U.S. Attorney made oral motions to this court to rule on the validity of the subpoena. Although Agan has not yet refused to comply with the subpoena, he has stipulated to the court that he would not produce the records or answer any questions before the grand jury. Because of this stipulation and the urgency of the situation, the court has agreed to make a preliminary ruling on whether the documents must be produced and whether Agan may be compelled to give oral testimony to the grand jury in connection with the production of the documents.

At a hearing on the respective motions, Agan conceded that the documents requested were corporate records and were not privileged from production because they were his personal papers. Agan also conceded that the existence and location of the records were not in dispute. Agan instead contended that he could not be compelled to produce the records because the act of submitting them to the grand jury would implicitly authenticate their contents, a testimonial act. Agan also argued that he could not be required to give his name, the name of his business, business address, or business telephone number because to do so would compel him to furnish a link in the chain of prosecution for wire fraud, 18 U.S.C. § 1343. The U.S. Attorney responded that a corporation must speak through its offi-

cers, and relied on the well settled rule that an officer of a corporation may be compelled to produce records of the corporation even if they tend to incriminate him. *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911). He further argued that the oral testimony requested of Agan would be necessary in order to ensure that he had complied with the subpoena.

■ The court concludes that Agan may be compelled to produce the corporate records and to testify to the extent necessary to ensure that he complied with the subpoena. This includes his name and address and whether particular records called for in the subpoena were produced. While the recitation of the name of one's business, its address and telephone number would be innocuous under most circumstances, the court can conceive of situations in which revelation of these' facts may tend to be incriminating. The court declines to rule on whether Agan can be compelled to answer any questions concerning his business activities until the actual questions have been propounded and Agan has refused to answer.[2]

■ Corporations have no fifth amendment privilege against self–incrimination and may be compelled to produce incriminating information. *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906) (seminal case). Corporations can only speak through their officers, and it is now beyond dispute that a corporate officer may be compelled to produce corporate records even though they may be personally incriminating. *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); *In re Grand Jury Subpoena of Fred R. Witte Center Glass No. 3*, 544 F.2d 1026 (9th Cir. 1976). *Accord, Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1976). *See also Fisher v. United States*, 425 U.S. 391, 411–12, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1975). Production of corporate records may be

**2.** Given the relative ease of proof of the business information sought, the United States At-

torney has indicated that he will not need to inquire into these matters.

compelled from an officer even if he is the sole shareholder or alter ego of the corporation. *Grant v. United States*, 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423 (1913); *United States v. Rosenstein*, 474 F.2d 705 (2d Cir. 1973); *In re Grand Jury Subpoena*, 460 F.Supp. 150 (W.D.Mo.1978). *Cf. United States v. Hankins*, 581 F.2d 431 (5th Cir. 1978) (partnership records), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1218, 59 L.Ed.2d 457 (1979).

The Supreme Court most recently addressed the question of when business records can be compelled by subpoena in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1975). In that case attorneys refused to produce accountants' workpapers relating to the preparation of their clients' income tax returns. The attorneys argued that the fifth amendment and attorney–client privileges precluded them from turning over the documents to the Internal Revenue Service. In rejecting the attorneys' claims, the Supreme Court expressed its view that the mere act of production would not itself involve testimonial self–incrimination:

> It is doubtful that implicitly admitting the existence and possession of the papers rises to the level of testimony within the protection of the Fifth Amendment . . . .
> The existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers.

*Id.* at 411, 96 S.Ct. at 1581.

The Court analogized the situation in *Fisher* to the compelled production of corporate records from its officers:

> This Court has also time and again allowed subpoenas against the custodian of corporate documents or those belonging to other collective entities such as unions and partnerships . . . over claims that the documents will incriminate the custodian despite the fact that producing the documents tacitly admits their existence and their location in the hands of their possessor. The existence and possession or control of the subpoenaed docu-

ments being no more in issue here than in the above cases, the summons is equally enforceable.

*Id.* at 411–12, 96 S.Ct. at 1581 (citations omitted).

The court holds that Agan can be compelled to produce the corporate records designated in the subpoena even though they may tend to incriminate him personally.

The question now presented is whether and to what extent a corporate officer can be compelled to testify concerning documents produced by a valid subpoena duces tecum. The court finds that absent unusual circumstances not present in this case, testifying as to one's name and address merely provides identification information ancillary to production of the documents called for in the subpoena and is not within the scope of the fifth amendment privilege against self–incrimination.

A more difficult question is whether the United States Attorney may compel a corporate officer to identify the records produced in the subpoena. In the leading case of *United States v. Austin–Bagley Corp.*, 31 F.2d 229 (2d Cir.), *cert. denied*, 279 U.S. 863, 49 S.Ct. 479, 73 L.Ed. 1002 (1929), Judge Learned Hand held that a corporate officer may be compelled to identify and authenticate corporate records produced pursuant to a valid subpoena duces tecum. The principle was followed in subsequent cases, *Lumber Products Ass'n v. United States*, 144 F.2d 546 (9th Cir. 1944), *rev'd on other grounds sub nom. United Brotherhood of Carpenters & Joiners v. United States*, 330 U.S. 395, 67 S.Ct. 775, 91 L.Ed. 973 (1947); *Carolene Products Co. v. United States*, 140 F.2d 61 (4th Cir.), *aff'd*, 323 U.S. 18, 65 S.Ct. 1, 89 L.Ed. 15 (1944), and was discussed with approval in *Curcio v. United States*, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957). In *Curcio*, the Supreme Court ruled that a grand jury witness could not be compelled to testify as to the location of union records which he failed to produce pursuant to a subpoena duces tecum. Without expressly ruling on the validity of the *Austin–Bagley* line of cases, the Court distinguished the case before it from the principle established in those cases:

The custodian's act of producing books or records in response to a subpoena *duces tecum* is itself a representation that the documents produced are those demanded by the subpoena. Requiring the custodian to identify or authenticate the documents for admission in evidence merely makes explicit what is implicit in the production itself. The custodian is subjected to little, if any, further danger of incrimination. However, in the instant case, the Government is seeking to compel the custodian to do more than identify documents already produced. It seeks to compel him to disclose, by his oral testimony, the whereabouts of books and records which he has failed to produce. *Id.* at 125, 77 S.Ct. at 1150.

In the twenty–three years since *Curcio* was decided several cases have relied on the principle established in *Austin–Bagley*. *E. g., United States v. Held*, 435 F.2d 1361 (6th Cir. 1970), *cert. denied*, 401 U.S. 1010, 91 S.Ct. 1255, 28 L.Ed.2d 545 (1971); *Sigety v. Abrams*, 492 F.Supp. 1123 (S.D.N.Y.1980); *United States v. Swart*, No. 679–7 Misc. (W.D.Mich., decided May 1, 1979). *See Communist Party of the United States v. United States*, 331 F.2d 807 (D.C.Cir.), *cert. denied*, 377 U.S. 968, 84 S.Ct. 1646, 12 L.Ed.2d 737 (1964). A few, however, have questioned its continued validity given the Supreme Court's shift in emphasis from property to privacy in its analysis of fifth amendment claims. *E. g., United States v. Fisher*, 500 F.2d 683 (3d Cir. 1974) (Gibbons, J. concurring), *aff'd*, 425 U.S. 391, 393, 96 S.Ct. 1569, 1572, 48 L.Ed.2d 39 (1975) (no discussion of point). Only two cases have been located which have been decided since *Fisher* and explicitly rely on the *Austin–Bagley* rationale. *Sigety v. Abrams, supra* ; *United States v. Swart, supra*. Both cases support its continued validity. This court also finds support in *Fisher* for the continued validity of the principle established in *Austin–Bagley* that a corporate officer may be compelled to identify documents he has

produced under subpoena.[3] By producing and identifying the corporate records, Agan is expressing "nothing more than the . . belief that the papers are those described in the subpoena." *Fisher* at 413, 96 S.Ct. at 1582. Agan is not being asked to "restate, repeat, or affirm the truth of the contents of the documents sought," *id.* at 409, 96 S.Ct. at 1580, but rather is asked only to confirm that the specific documents requested in the subpoena are included in the corporate records produced. Although this involves compelling oral testimony, it is only ancillary to the primary act compelled, that of producing the documents. This limited testimony is necessary to avoid, in cases such as this, later disputes over what documents were included in voluminous corporate records.

■ The only remaining issue is whether Agan may be compelled to give oral testimony with regard to the name of his business, its address and telephone number. While the limited business information sought by the United States Attorney may seem innocuous, it is beyond dispute that information concerning the nature of one's business may be privileged under the fifth amendment. *Greenberg v. United States*, 343 U.S. 918, 72 S.Ct. 674, 96 L.Ed. 1332 (1952) (per curiam), *rev'g* 192 F.2d 203 (5th Cir.) on the authority of *Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). *See also American Cyanamid Co. v. Sharff*, 309 F.2d 790 (3d Cir. 1962). The court finds that it would be premature to rule on whether Agan may be compelled to give testimony concerning his business activities without having the specific questions before it and Agan's refusal to answer. *United States v. Roundtree*, 420 F.2d 845, 852 (5th Cir. 1969); *United States v. Swart, supra*. This is particularly true given the fact that the United States Attorney has indicated he may not inquire into these matters.

**3.** The court does not rely on *Austin–Bagley's* holding that an officer can be compelled to authenticate corporate records so as to make their admission into evidence at a subsequent

trial possible without further authentication. The court holds only that a corporate officer can be compelled to identify records which he has produced under subpoena.

Accordingly, and for the above reasons, the court finds that the subpoena duces tecum should not be quashed. Mr. Agan is therefore directed to respond to the subpoena at 9:00 a. m. on September 9, 1980, and to produce the documents requested in the subpoena and to give limited oral testimony, including his name, address, and whether specific documents have been produced.

IT IS SO ORDERED.