<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 15-2091**

—————————

CLEAN AIR CAROLINA; YADKIN RIVERKEEPER; NORTH CAROLINA
WILDLIFE FEDERATION,

        Plaintiffs - Appellants,

        v.

NORTH CAROLINA DEPARTMENT OF TRANSPORTATION; FEDERAL HIGHWAY
ADMINISTRATION; JOHN F. SULLIVAN, in his official capacity
as Division Administrator of FHWA; NICHOLAS J. TENNYSON, in
his official capacity as NC Secretary of Transportation,

        Defendants - Appellees.

—————————

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh. James C. Dever III,
Chief District Judge. (5:14-cv-00863-D)

—————————

Argued: May 12, 2016           Decided: June 9, 2016

—————————

Before WILKINSON, MOTZ, and SHEDD, Circuit Judges.

—————————

Affirmed by unpublished per curiam opinion.

—————————

**ARGUED:** Kimberley Hunter, SOUTHERN ENVIRONMENTAL LAW CENTER,
Chapel Hill, North Carolina, for Appellants. Erika Barnes
Kranz, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.;
Thomas Norfleet Griffin, III, PARKER POE ADAMS & BERNSTEIN LLP,
Charlotte, North Carolina, for Appellees. **ON BRIEF:** Ramona
McGee, SOUTHERN ENVIRONMENTAL LAW CENTER, Chapel Hill, North
Carolina, for Appellants. John C. Cruden, Assistant Attorney
General, Jared Pettinato, Environment & Natural Resources

Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Gloria Hardiman-Tobin, Jack Gilbert, Christopher S. Jones, FEDERAL HIGHWAY ADMINISTRATION, Atlanta, Georgia; Matthew L. Fesak, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellees Federal Highway Administration and John F. Sullivan.  Scott Slusser, Special Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees North Carolina Department of Transportation and Nicholas J. Tennyson.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The North Carolina Department of Transportation and the Federal Highway Administration (collectively "the Agencies") approved construction of a twenty-mile toll road in western North Carolina linking Mecklenburg and Union Counties -- the Monroe Connector Bypass. Seeking to enjoin construction of the toll road, Clean Air Carolina, the North Carolina Wildlife Federation, and Yadkin Riverkeeper (collectively, "the Conservation Groups") filed suit in 2010. The Conservation Groups contended that the process by which the Agencies approved the road violated the National Environmental Policy Act ("NEPA") and the Administrative Procedure Act ("APA"). See National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321-74 (2012); Administrative Procedure Act, 5 U.S.C. §§ 701-06 (2012).

The district court granted summary judgment to the Agencies. See N.C. Wildlife Fed'n v. N.C. Dep't of Transp., No. 5:10-CV-476-D, 2011 WL 5042075 (E.D.N.C. Oct. 24, 2011). On appeal, we reversed and remanded. See N.C. Wildlife Fed'n v. N.C. Dep't of Transp., 677 F.3d 596 (4th Cir. 2012). We explained that "NEPA procedures emphasize clarity and transparency of process over particular substantive outcomes." Id. at 603. "Because the Agencies failed to disclose critical assumptions underlying their decision to build the road and instead provided the public with incorrect information," we held

3

that their lack of transparency violated NEPA.  Id. at 598.  We reserved judgment on the legitimacy of the Agencies' analysis, and remanded "so that the Agencies and the public [could] fully (and publicly) evaluate" that analysis.  Id. at 605.

In July 2012, the Agencies rescinded their prior Record of Decision and reinitiated the NEPA process.  In November 2013, the Agencies published a new draft Environmental Impact Statement ("EIS") indicating that they had "reevaluated the primary needs for the proposed action" and that "those needs [had] not changed" from those in the original EIS.  In the time after issuance of the original EIS, the Agencies had reduced traffic congestion on U.S. 74 -- the road in question -- through minor improvements in the infrastructure.  The Agencies nevertheless concluded that "while providing some short-term benefit," the minor improvements would "not meet the purpose and need for the Monroe Connector Bypass project."  The Agencies thus concluded that the toll road was still "the best option" for meeting the area's long-term traffic needs.

In reaching that conclusion, the Agencies also reevaluated the data that they had failed to disclose to the public during the original NEPA process.  In order to evaluate the environmental impact of building the toll road, NEPA requires the Agencies to compare the projected impact of building the toll road to a "no-build" baseline of the environmental impact

4

without the road.  Previously, the no-build baseline that the Agencies relied on had in some parts <u>assumed</u> the existence of the toll road -- and in denying that assumption the Agencies had not been transparent with the public.  Now, admitting their original error, the Agencies conducted a new no-build analysis that properly excluded the existence of the toll road.  They concluded, however, that the travel time and land use projections -- taking into account the correct information -- were identical to their original projections.  Consequently, the Agencies confirmed that their original no-build model was accurate, and compared it to an updated build model based on current data.

In December 2013, the Agencies held public hearings on their draft EIS.  The Conservation Groups submitted comments, including an expert report that criticized the Agencies' reliance on their prior data.  In May 2014, the Agencies simultaneously released a new final EIS and a new Record of Decision.  The final EIS discussed updated socioeconomic projections, which had been released in January 2014, that projected growth in the area by 2040.  Those projections showed that the surrounding counties would not grow as quickly as previously estimated, but would still reach the previous estimates by 2040.  The Record of Decision thus confirmed the

5

Agencies' decision to build the road.  The Conservation Groups again filed suit.

The Conservation Groups alleged that the Agencies violated NEPA and the APA in four ways:  (1) the alternatives analysis was arbitrary and capricious; (2) the environmental impact analysis was arbitrary and capricious; (3) the Agencies undermined NEPA by fostering a climate of misinformation; and (4) the Agencies should not have issued the final EIS and the Record of Decision at the same time.

In a lengthy opinion, the district court rejected those challenges.  First, the court found that the Conservation Groups did not establish that the Agencies "failed to take a sufficient 'hard look' at the reasonable alternatives."  Clean Air Carolina v. N.C. Dep't of Transp., No. 5:14-CV-863-D, 2015 WL 5307464, at *8 (E.D.N.C. Sept. 10, 2015).  The district court explained that the Agencies "adequately created and compared No Build and Build scenarios" and corrected their previous flaws in evaluating alternatives.  Id. at *10.  Second, the court found that the Agencies had adequately analyzed the environmental impacts of the project -- including any growth induced by the project itself and the cumulative impacts of the project.  Id. at *11-13.  Third, the court found that "in light of the administrative record as a whole" the Agencies had complied with NEPA's requirements for public comment and transparency.  Id. at *14-

6

15. Finally, the court found that the Agencies did not abuse their discretion in issuing the final EIS and the Record of Decision together. Id. at *15-16. Concluding that the Agencies had met all of the requirements of NEPA and the APA, the district court granted summary judgment to the Agencies. Id. at *17. The Conservation Groups then filed this appeal.

Having carefully considered the controlling law and the parties' briefs and oral arguments, we affirm on the reasoning of the thorough district court opinion.

AFFIRMED