In re **GRAND JURY SUBPOENA DUCES TECUM DATED APRIL 23, 1981 WITNESS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 1584, Docket 81–6086.

United States Court of Appeals, Second Circuit.

Argued June 5, 1981.
Decided Aug. 7, 1981.

Robert Kasanof, New York City (Kasanof Schwartz Iason, New York City, Lawrence Iason, Howard Heiss, of counsel), for appellant.

Nathaniel H. Akerman, Asst. U. S. Atty., New York City (John S. Martin, Jr., U. S. Atty., S.D.N.Y., Mark F. Pomerantz, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before LUMBARD and OAKES, Circuit Judges, and LASKER,* District Judge.

LASKER, District Judge:

■ The legal principles governing this appeal are not disputed. On the one hand, the Fifth Amendment protects individuals from government compelled production of personal documents. *Bellis v. United States,* 417 U.S. 85, 87, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974); *United States v. White,* 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944); *Wilson v. United States,* 221 U.S. 361, 377–78, 31 S.Ct. 538, 543, 55 L.Ed. 771 (1911); *Boyd v. United States,* 116 U.S. 616, 630, 633–35, 6 S.Ct. 524, 533–534, 29 L.Ed. 746 (1886). On the other hand, the privilege against self-incrimination does not extend to the records or documents of a corporation or association. *Bellis v. United States,* 417 U.S. 85, 88, 94 S.Ct. 2179, 2183, 40 L.Ed.2d 678 (1974); *United States v. White,* 322 U.S. 694, 699–701, 64 S.Ct. 1248, 1251–1252, 88 L.Ed. 1542 (1944); *Grant v. United States,* 227 U.S. 74, 79–80, 33 S.Ct. 190, 192, 57 L.Ed. 423 (1913); *Wheeler v. United States,* 226 U.S. 478, 490, 33 S.Ct. 158, 162, 57 L.Ed. 309 (1913); *Wilson v. United States,* 221 U.S. 361, 377–78 (1911).

* Hon. Morris E. Lasker of the United States District Court for the Southern District of New York, sitting by designation.

This case presents a problem of categorization: whether the pocket diaries and desk calendars used by a corporate executive are more appropriately characterized as personal documents and protected against compelled production, or as corporate documents which lie outside the Fifth Amendment's shelter.

## I.

"John Doe" appeals from an order of the district court holding him in contempt for refusing to comply with a grand jury subpoena *duces tecum* directing the production of "[a]ll original pocket calendars and desk calendars reflecting business appointment between January 1, 1973, and December 31, 1978." Sanction has been stayed pending the outcome of this appeal.

The grand jury which issued the subpoena in question is investigating the operations of a company of which Doe is an assistant treasurer. Doe is responsible for overseeing the investments of other company executives.

According to the testimony of Doe's secretary, before the Securities and Exchange Commission and before the grand jury, Doe maintained a record of his appointments through the use of a pocket diary which he kept with him at all times. Some but not all of his appointments were also noted in a desk calendar. Because it was incomplete, the desk calendar was not as reliable as the pocket diary. The secretary occasionally wrote in the desk calendar, but she never wrote in the pocket diary. At the end of each year, Doe took the diary and desk calendar to his home.

The secretary also testified that the pocket diary contained Doe's business and doctor appointments, as well as other personal reminders. Moreover, Doe used the desk calendar, according to his secretary, to remind himself when the investments of company employees "were coming due."

An unaided examination of the diaries and the desk calendars reveals very little as to the meaning of their contents. Many of the notations are illegible, and as to those which can be read, the significance is not apparent. In the pocket diaries, some notations appear to record appointments with named persons, although it is not always clear whether the appointments are business or personal. An exception exists in a few cases, such as when a name is preceded by the designation "Dr." Frequently a single name appears on a certain date in the diary, without a time which might be expected if it connoted an appointment to meet that person. There are also numerical notations, which, in light of the testimony of the secretary, may relate to investment information either of Doe or other company executives. The desk calendars contain predominantly blank pages. Occasionally notations similar to those found in the pocket diaries appear there and on miscellaneous detached slips of paper which are included among the pages of the calendars.

The district court concluded that
"these papers contain substantially a record of corporate entries and records of business appointments and a record of matters pertaining to corporate business.

"There are scattered entries like the name of somebody whose surname is preceded by the title 'doctor' and it could mean a doctor's appointment. Also the name of someone with a lady's name who could be the writer's wife or daughter and there is a reference to a theatre which could be a place of meeting or perhaps just a place of where the writer intended to spend an evening for his own diversion.

"I accept Mr. Ackerman's statement that any items of a personal nature will not only be relied upon, they will not be used for any purpose by the government since the government's only interest and the materiality and relevance of the corporate records relate to the corporate matters and not the personal matters. So that any entries, if they are entries of a personal nature, are excluded from use by the government.

"They cannot be excluded from the calendars or the pocket diaries because, unfortunately, they are so intimately associated as a physical matter with the diaries

and the calendars that they cannot be excerpted without destroying or defacing the appearance of the calendar or diary where they appear. But there are so few of them, I dare say that of the entries I looked at by far the large majority, the bulk of all the entries are obvious that they are patent business and corporate entries and not matters which could be deemed to be of a personal nature." (J.A., 36–37).

Doe argues that the diaries and calendars are personal documents whose production may not constitutionally be compelled. The government argues that the district court correctly found that the documents were corporate in nature.[1]

## II.

No decision of the Supreme Court or this court has previously addressed the question presented here: what determines whether a document's character is personal or corporate in a business office.[2]

Doe relies on *In re Grand Jury Proceedings (Johanson)*, 632 F.2d 1033 (3d Cir. 1980), in which the court held that the Fifth Amendment protected a witness against compelled disclosure of his "purely personal date books." *Id.* at 1042. However, the *Johanson* court did not consider whether, and the government did not argue that, the date books were corporate rather than personal in that case.

To determine what criteria are relevant to the issue, the lodestar is the language of the Fifth Amendment:

"No person . . . shall be compelled in any criminal case to be a witness against himself."

Thus, in determining whether the documents are personal or corporate, the issue is whether by requiring their production, the witness is being compelled to testify against himself. The following nonexhaustive list of criteria is relevant to this determination: who prepared the document, the nature of its contents, its purpose or use, who maintained possession and who had access to it, whether the corporation required its preparation, and whether its existence was necessary to the conduct of the corporation's business.

In the case at hand, it cannot be determined from the record as it now stands whether, according to the criteria just listed, the documents ought to be characterized as "corporate" or "personal." It does appear that Doe alone prepared and maintained the pocket diaries, kept them in his sole possession, and was the only person having access to them. As to the desk calendars, Doe's secretary also had access to them and occasionally made entries to them. However, as noted above, the nature of the contents of the documents is not facially apparent. It appears that the district judge examined the documents *in camera*, unaided by any explanation of their

---

1. The government also contends, relying on *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), that even if the documents are deemed to be personal and not corporate, their compelled production would nevertheless not violate Doe's Fifth Amendment rights, because by producing them he is not testifying to their contents, and the Fifth Amendment guards against compelled testimony only. However, this court has already held in a post-*Fisher* decision that such production does constitute testimony and if compelled will violate the Fifth Amendment. *United States v. Beattie*, 541 F.2d 329, 331 (2d Cir. 1976).

2. The only decision by another circuit court to address this issue was *United States v. MacKey*, 647 F.2d 898 (9th Cir. 1981) (per curiam), in which the court held that a "Brooks Brothers diary and a desk-type calen-

dar" were corporate documents, and affirmed the district court order holding the defendant in contempt for failing to produce them in response to a government subpoena. *Id.*, at 899. Some of the facts in that case were similar to those presented here. The documents were kept by the defendant, were in his possession and were not required to be kept for the corporation. However, in *MacKey*, the defendant "used the diary and calendar to record business meetings and transactions that he conducted as an executive of [the corporation]." *Id.* at 901. There does not appear to have been any question in that case as to the nature of the contents of the documents. In contrast, here, as discussed above, it is unclear from the record as it now stands whether the contents of the documents are corporate or personal.

contents other than the testimony of Doe's secretary before the grand jury and the SEC, and that he made his determination based on the face of the documents themselves. Yet, given their inscrutable nature, it is unclear how that determination was made. Consequently, there is no basis on which to affirm or reverse the finding that the contents of the documents are primarily business related.[3]

In the circumstances, we remand for clarification on the basis of the district court's finding.

LUMBARD, Circuit Judge (dissenting):

The record supports the district court's ruling that both records contain entries of a business nature and must be produced. I would affirm the order of the district court.

---

**3.** Moreover, the district judge ordered that the diaries and calendars be produced to the government only insofar as they contained business entries, and the government was directed not to use those entries which were personal. Since it is not clear from the diaries and calendars which entries are personal and which are corporate, it is not clear how this ruling can be enforced.