# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JANE and JOHN DOE, guardians ad litem   :
for JOHN DOE 2, a minor, and JANE and   :
JOHN DOE,   :
  :
     Plaintiffs,   :
  :
v.   :    C.A. No. S17C-02-008 RFS
  :
PAUL SOMERSET, et al.   :
  :
     Defendants.   :

## OPINION

Date Submitted: April 8, 2019
Date Decided: August 2, 2019

*Plaintiffs' Motion for Reconsideration of Commissioner's Order - GRANTED*

Raeann Warner, Esquire and Thomas C. Crumplar, Esquire, Jacobs & Crumplar, P.A., 750 Shipyard Drive, Suite 200, Wilmington, Delaware 19801, Attorneys for Plaintiffs.

Jessica L. Reno, Esquire, Mark L. Reardon, Esquire, and Brian D. Ahern, Esquire, Eckert Seamans Cherin & Mallot, 222 Delaware Avenue, 7th Floor, Wilmington, Delaware 19801, Attorneys for Plaintiffs.

**STOKES, R. J.**

## ORDER

The Court having duly considered the Motion for Reconsideration of Commissioner's Order filed by John and Jane Doe, individually and as *guardians ad litem* of John Doe 2, a minor (collectively, the "Defendants") pursuant to Superior Court Civil Rule 132 (a) (3) and the response thereto filed by Paul, Daniel, and Jason Somerset (collectively, the "Plaintiffs"), IT APPEARS THAT:

1. This personal injury action was filed by the parents of a minor on their behalf and on behalf of their child against Paul Somerset, Dan Somerset, and Jason Somerset ("Jason"). Jason is a minor and the Somersets' adopted son. The complaint alleges that Jason sexually assaulted the Plaintiffs' child.

2. Felony sex charges are currently pending against Jason in Family Court throughout several competency evaluations Jason has consistently been deemed incompetent to participate in his own defense. That case currently remains pending.

3. The progress of this case has been hindered due to the parallel criminal proceeding. Defendants' request for a continued stay was denied by this Court by order dated January 26, 2018. Going forward, discovery directed to Jason was prohibited in light of the criminal proceeding, and it was made clear that his Fifth Amendment rights were to be respected.

4. In response to the Plaintiffs' request for production of documents, the Defendants agreed to produce certain educational and medical documents (including neuropsychological evaluations, mental competency evaluations, and therapy notes) subject to an "attorneys' eyes only" designation.

After review of those documents, the Plaintiffs moved for a legal determination that the documents should not be deemed "attorneys' eyes only" and for an order compelling production of the documents without that designation. The Defendants opposed this motion and moved for a protective order regarding the documents. As grounds for their opposition, the Defendants expressed concern that, given the pendency of the criminal case against him, Jason's Fifth Amendment rights would still be jeopardized notwithstanding the limitation of the discovery.

5. The Commissioner's decision was released on March 7, 2019 (the "Order").[1] The Commissioner conducted an *in camera* review of all the documents and determined that, going forward, only 59 of those documents would remain subject to the "attorneys' eyes only" designation. The Order stated that continued protection of the selected documents was necessary as they "contain statements or information which incriminate Jason or which may lead to information which may incriminate him." Any documents not selected were

_____

[1] D.I. 94.

3

deemed acceptable for review by the Plaintiffs and for use in depositions or other discovery.

6. The Plaintiffs have now moved for reconsideration of the Order.[2] They assert that the determination that consideration of Jason's Fifth Amendment rights warrants continued protection of the 59 selected documents is contrary to law and should be changed. Specifically, the Plaintiffs argue that the document requests were directed to Paul and Daniel Somerset and that they cannot assert the Fifth Amendment privilege on Jason's behalf. The Plaintiffs also contend that the documents are not protected under the Fifth Amendment because they are business records of schools and doctors and their creation involved no compelled disclosures by Jason. Finally, the Plaintiffs argue that the Order was clearly erroneous as the Defendants never properly asserted the Fifth Amendment privilege.

7. The Defendants oppose the Plaintiffs' motion for reconsideration on the grounds that the ongoing parallel criminal proceeding against Jason requires that his Fifth Amendment rights be respected in the civil discovery process. The Defendants assert that as Jason is a minor who is mentally incompetent to participate in his own defense in the criminal trial, his parents are the only ones capable of asserting any privilege on his behalf. The Defendants further argue that

_____

[2] D.I. 100

4

fundamental fairness concerns warrant protection of the documents and that failure to do so would cause grave injustice to Jason.

8. Pursuant to Superior Court Civil Rule 132, Commissioners are "empowered to conduct non case-dispositive hearings and to hear and determine any non case-dispositive matter pending before the Court, as well as to conduct case-dispositive hearings and to submit to a judge of this Court proposed findings of fact and recommendations for the disposition, by a judge, of any such case-dispositive manner."[3] The standard of review for a commissioner's decision depends on whether the matter heard was case-dispositive or non case-dispositive.[4] The issuance of a protective order with regard to discovery documents is a pretrial matter that is non case-dispositive. Rule 132 provides that a judge may reconsider a commissioner's order "only where the movant demonstrates that the commissioner's order is based upon findings of fact that are clearly erroneous, or is contrary to law, or is an abuse of discretion."[5]

9. The first issue is whether Jason's parents can assert the Fifth Amendment privilege on his behalf in response to discovery requests directed to them. The Plaintiffs assert that, as the Fifth Amendment protects against *self-*

---

[3] *Continental Cas. Co. v. Borgwarner Inc.*, 2016 WL 3909467, at *2 (Del. Super. July 14, 2016).
[4] *Id.*
[5] *Doe v. Slater*, 2014 WL 6669228, at *1 (Del. Super. Nov. 12, 2014).

incrimination, Jason's parents cannot claim the privilege as they are not personally in danger of facing any criminal charges for the events at issue here. In the Plaintiffs' view, whether the documents at issue contain incriminating evidence against Jason is immaterial to this analysis. In support, the Plaintiffs cite to case law evidencing the principle that the Fifth Amendment is a personal privilege that can only be invoked when documents or statements containing incriminating evidence are directly sought from the very person they incriminate.[6]

The problem with the Plaintiffs' argument on this issue is that it fails to account for the special, legally recognized, relationship between parents and their minor children. Neither of the cases cited by the Plaintiffs address the actual situation currently under review.[7] As Jason is a minor child with documented developmental and cognitive disabilities, his parents are the only people that could effectively assert his Fifth Amendment, or any other, privilege.[8] Moreover, given traditional living arrangements, parents will, as a matter of necessity and practical

---

[6] *Couch v. United States*, 409 U.S. 322 (1973); *Fisher v. United States*, 425 U.S. 391 (1976).

[7] See *Couch*, 409 U.S. 322 (involving a taxpayer's business and tax records in possession of her accountant); *Fisher*, 425 U.S. 391 (involving a taxpayer's financial documents prepared by an accountant and in the possession of the taxpayer's lawyer).

[8] Notably, Delaware's lawyer-client privilege and mental health provider, physician, and psychotherapist-patient privilege both explicitly provide that guardians may invoke those privileges on a person's behalf. See D.R.E. 502 (c), 503 (c).

reality, be in effective and/or sole possession of any documents concerning their minor child of the type at issue here. Therefore, the ultimate consequence of accepting the Plaintiffs' position is that documents that would be in a minor's control were they an adult are rendered completely unprotected by the Fifth Amendment so long as an opposing party directs discovery requests seeking such documents to the minor's parents. This is an unjust and unacceptable outcome. Accordingly, I reject the Plaintiffs' argument and find that the Commissioner correctly allowed Paul and Daniel Somerset to assert the Fifth Amendment privilege on behalf of Jason in this case.

10. The next question is whether the Order correctly determined that the 59 selected documents are protected under the Fifth Amendment and should remain subject to the "attorneys' eyes only" designation.[9] Current Fifth Amendment jurisprudence stems from the United States Supreme Court's opinion in *Fisher v. United States*, 425 U.S. 391 (1976). In *Fisher*, the Court made clear that the Fifth Amendment only applies "when the accused is compelled to make a testimonial communication that is incriminating."[10] In Fifth Amendment cases concerning the disclosure of documents, the Court has fashioned two categories for analysis:

---

[9] As I have already determined that Jason's Fifth Amendment right against self-incrimination may be asserted by his parents on his behalf, the question becomes whether Jason, viewed as an adult, could use this privilege and refuse to produce the documents in question.

[10] *Fisher*, 425 U.S. at 408.

7

business records, and non-business private records. An individual cannot claim the Fifth Amendment privilege with regard to business records, even if they are in his own possession.[11] This is because such documents are typically voluntarily prepared and the information they contain voluntarily supplied.[12] However, even if the contents of a document are not privileged, in certain situations the act of producing them may be if such act is compelled, testimonial, and incriminating.[13] The circuit courts split on whether the Fifth Amendment privilege should cover wholly personal, private records. The Third Circuit has held that a person has a "rightful expectation of privacy" with regard to personal papers and that the Fifth Amendment privilege therefore prohibits their compelled production.[14]

In the current case, none of the selected documents at issue can be fairly deemed "private records" for a Fifth Amendment analysis. None of these documents were personally prepared by Jason with the intention of keeping them private. The vast majority of the documents were prepared by medical professionals or others in furtherance of Jason's treatment and continuing education. Although these documents certainly include information of a more personal nature than that typically included in a "business document," they were all

---

[11] *United States v. Doe*, 465 U.S. 605 (1984).
[12] *Id.* at 612 n. 10.
[13] *Id.* at 613.
[14] *In re Grand Jury Proceedings*, 632 F.2d 1033, 1044 (3d Cir. 1980).

8

voluntarily prepared and any information from Jason included in them was not obtained through compulsion. As business records, the selected documents are not subject to the Fifth Amendment protections simply because they may contain incriminating information.

Additionally, the selected documents are not protected under any Fifth Amendment "act of production" privilege. Indeed, the manner in which they were produced supports the conclusion that they should not be deemed privileged going forward. The Defendants were aware of the potential Fifth Amendment issues in this case from the start. When responding to the Plaintiffs' requests for production, they redacted a small portion of text from one document. This redaction was accompanied by an assertion of privilege.[15] The Defendants agreed to produce all other documents pursuant to the "attorneys' eyes only" designation. The Defendants have not addressed how this two-tiered production process is required by the Fifth Amendment. The Court is unaware of any authority supporting the use of an "attorneys' eyes only" designation as a substitute for a genuine Fifth Amendment claim.

---

[15] The Plaintiffs have not challenged this redaction.

Under current Fifth Amendment law the 59 selected documents were not privileged and should not remain subject to the "attorneys' eyes only" designation. Neither the content of these documents nor their production involves any compelled information or action from Jason.[16]

11. Considering the selected documents are not protected under Jason's Fifth Amendment rights, the issue of whether the privilege was properly asserted is moot.

WHEREFORE, IT IS HEREBY ORDERED that the Plaintiffs' March 18, 2019 Motion for Reconsideration of Commissioner's Order is GRANTED.

---

[16] The Defendants' assertion that this finding could harm Jason if the Plaintiffs take information learned from this civil discovery and use it on the witness stand during the criminal proceedings is misplaced. The Court finds that the Plaintiffs are unopposed to a ruling of incompetency in Family Court. Defendants' counsel explicitly attributed this position to the Plaintiffs in the presence of Plaintiffs' counsel. *See* Transcript of Teleconference Before Commissioner Howard, Feb. 13, 2019, at 15:1-7. Plaintiffs' counsel did not object to this characterization, and such silence indicates consent and agreement. The circumstances dictated that Plaintiffs' counsel speak up and notify the Commissioner if the statement was inaccurate. *See Brittingham v. Bd. of Adjustment of City of Rehoboth Beach,* 2005 WL 170690, at *6 (Del. Super. Jan. 14, 2005). Nor is the State opposed to a finding of incompetency, which appears to be inevitable. *See* Transcript of Hearing Before Commissioner Howard, Oct. 12, 2018, at 8:14-18.

In the unlikely event Jason is found to be competent, the documents at issue contain no allegations of rape like what is alleged in the Complaint. They would not support a DRE 404 (b) finding of prior bad acts for an appropriate noncharacter purpose. An *actual* Fifth Amendment concern would not even reach bad act evidence. *See Eden v. Oblates of St. Francis de Sales,* 2007 WL 4722830, at *3 (Del. Super. Dec. 14, 2007). The only probative value, if any, would be in the civil claim against the parents for a nonhearsay purpose – i.e., were they on notice of Jason's potential misbehavior.